UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALRELIO L. EVANS,

    Petitioner,                                            CASE NO. 2:05-72726
                                                       HONORABLE PAUL D. BORMAN
v.                                                        UNITED STATES DISTRICT JUDGE

TIM LUOMA,

    Respondent.

_____/

**OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS; (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS**

Alrelio L. Evans, ("petitioner"), presently confined at the Marquette Branch Prison in Marquette, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for first-degree murder, M.C.L.A. 750.316; M.S.A. 28.548; and felony-firearm, M.C.L.A. 750.227b; M.S.A. 28.424(2). For the reasons stated below, the application for a writ of habeas corpus is DISMISSED WITH PREJUDICE.

**I. BACKGROUND**

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court. Petitioner's co-defendant, Clyde D. Taylor, who was tried jointly with petitioner, was also convicted of the same offenses. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review. *See Monroe v. Smith,* 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001).

1

Defendants' convictions arise from the drive-by shooting death of Donnie McCorkle. A few weeks before the shooting, McCorkle was involved in an altercation with defendant Taylor's girlfriend.  The prosecution's principal witness at trial was defendant Taylor's sixteen-year-old cousin, Richard Brooks, who testified that he was present inside a Ford Expedition with the two defendants at the time of the shooting.  According to Brooks, defendant Evans fired at McCorkle as defendant Taylor drove the vehicle.  Defendant Taylor's jury also heard evidence of Taylor's confession to the police, wherein he explained that he participated in the offense to get back at McCorkle for the earlier confrontation with his girlfriend.

*People v. Evans,* No. 236351, * 1-2 (Mich.Ct.App. September 30, 2003).

Petitioner's conviction was affirmed on appeal. *Id., lv. denied*, 469 Mich. 1027 (2004).

Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. Appellant Alrelio Evans was denied his constitutional right to effective assistance of counsel, therefore, he is entitled to a new trial and/or hearing pursuant to *People v Ginther*, 360 Mich. 436 (1973).

II. Appellant Alrelio Evans was denied his right to a fair and impartial jury where the jury was given the court reporter tape recorder during their deliberations in violation of both State and Federal Constitutions.  Therefore, he is entitled to a new trial and/or a remand for a hearing on this violation.

III. Appellant Alrelio Evans was denied a fair trial by the prosecutor's misconduct and violated his right to due process of law clause of both the Federal and State Constitutions.

IV. The trial court abused its discretion by denying the motion for new trial where the guilty verdict was against the great weight of the evidence.

V. The trial court's failure to ascertain on the record whether appellant Alerlio Evans intelligently and knowingly waived his right to testify requires a new trial.

VI. The cumulative effect of the foregoing errors denied appellant Alrelio Evans of a fair trial in violation of due process of law and requires reversal.

VII. The Defendant was denied the Equal Protection Clause of the United States Constitution when the court clerk excused the only two African-American jurors from Mr. Evans' jury as the number of jurors was reduced to twelve jurors prior to deliberation.

VIII. The trial court invaded the jury's fact finding function by instructing the jury that defendant's state of mind could be inferred from the use of a dangerous weapon.

IX. Mr. Evans was denied a fair trial where the trial court discouraged jurors from rehearing the testimony of two key witness (sic) by in effect telling them if they really wanted to hear the testimony, they could only hear a read-back from the recorder of the court reporter.

>  X. Defendant's non-parolable mandatory life sentence for first degree murder violates the Michigan Constitution because it is an indeterminate sentence and because it constitutes cruel or unusual punishment.

## II.   STANDARD OF REVIEW

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

In reviewing a habeas corpus petition to determine whether the state court decision was based on an unreasonable determination of facts, a federal court applies a presumption of correctness to the factual findings made by the state court. *Warren v. Smith,* 161 F. 3d 358, 360 (6th Cir. 1998). A habeas petitioner may rebut this presumption of correctness only with clear

and convincing evidence. *Id.* at 360-61.  A state appellate court's findings of fact are also entitled to the presumption of correctness. *Martin v. Rose*, 744 F. 2d 1245, 1252 (6th Cir. 1984).

**III.   ANALYSIS**

   **A.  Claims # 1, 3, and 5.  The ineffective assistance of counsel, prosecutorial misconduct and right to testify claims.**

   In his first claim, petitioner contends that he was deprived of the effective assistance of trial counsel.  The Court will also discuss petitioner's third claim involving prosecutorial misconduct and his fifth claim involving the right to testify, because these two claims are intertwined with two of petitioner's ineffective assistance of counsel claims.

   To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002).  A habeas petitioner is also entitled to relief if he or she can present clear and convincing evidence to establish that the state court's rejection of the petitioner's ineffective assistance of counsel claim reflected an unreasonable determination of the facts in light of the evidence presented to the state court. *See Dugas v. Coplan,* 428 F. 3d 317, 332-34 (1st Cir. 2005); *See also Fargo v. Phillips,* 58 Fed. Appx. 603, 607 (6th Cir. 2003).

   *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

   Petitioner first contends that his trial counsel was ineffective for failing to present an alibi defense.  The Michigan Court of Appeals rejected this claim, finding that although

petitioner had presented affidavits in support of an alibi defense, he had failed to present sufficient evidence to establish that he made a good-faith effort to avail himself of this defense by advising his attorney of the facts in support of it prior to trial. In so ruling, the Michigan Court of Appeals noted that although petitioner made several complaints at his sentencing involving alleged defects in his case, petitioner did not mention any alibi. The Michgan Court of Appeals concluded that the record therefore did not support petitioner's assertion. *Evans,* Slip. Op. at * 2.

In order to prevail on his ineffective assistance of counsel claim, petitioner must overcome the Michigan Court of Appeals' factual finding that petitioner's counsel was never advised by petitioner about his alibi defense or any witnesses in support of that defense. *See Bigelow v. Williams,* 367 F. 3d 562, 571 (6th Cir. 2004). This "is no small task[.]", because this Court must presume that the state court's factual findings are correct, unless petitioner can overcome the presumption of correctness by clear and convincing evidence. *Id.*

Although the affidavits submitted by petitioner to the Michigan Court of Appeals and to this Court provide some support for his claim, petitioner has failed to show, by requisite clear and convincing evidence, that the Michigan Court of Appeals erred in finding that petitioner's trial counsel had not been made aware of a potential alibi defense by petitioner. *Bigelow,* 367 F. 3d at 571. At the time of sentencing, petitioner complained extensively about numerous alleged defects in his case, but did not mention an alibi or any problems with counsel's representation. (Sent. T., 06/07/01, pp. 19-21). In fact, petitioner thanked his trial counsel for his services. (*Id.* at p. 19). Although petitioner's girlfriend Vanessa Henry signed an affidavit which indicated that petitioner was with her on the night of the shooting, there is nothing in Henry's affidavit

5

which states that either she or petitioner ever informed counsel about this fact. Meanwhile, petitioner's unsworn affidavit is insufficient to overcome the presumption of correctness that attaches to state court factual determinations. *See e.g. Burket v. Angelone,* 37 F. Supp. 2d 457, 468 (E.D. Va. 1999). "[I]n view of the deferential standard of review that applies in this setting," *See Bigelow,* 367 F. 3d at 571, this Court finds that petitioner has failed to rebut the Michigan Court of Appeals' factual finding that petitioner failed to inform his trial counsel about his alibi witnesses so as to obtain habeas relief on this claim.

Petitioner next contends that counsel was ineffective for failing to move to suppress Brooks' testimony on the ground that Brooks, who was a minor at the time of his arrest, had been held in custody for six days and was threatened with prosecution and informed that he would not see his mother again unless he incriminated petitioner.

The Michigan Court of Appeals rejected this claim, in part, because Brooks consistently denied throughout trial that he had been coerced or intimidated into making any statements. Although Brooks admitted being told that he would be charged if he did not make a statement, he further indicated that the police told him to tell the truth. The Michigan Court of Appeals concluded that because the totality of circumstances did not suggest that Brooks' statements were unreliable, counsel was not ineffective in failing to move to suppress either Brooks' statements or trial testimony. *Evans,* Slip. Op. at * 2.

In general, a criminal defendant does not have standing to challenge a violation of a cooperating witness' rights; however, because illegally obtained confessions may be less reliable than voluntary ones, the use of a coerced confession at another defendant's trial can violate due process. *See Douglas v. Woodford,* 316 F. 3d 1079, 1092 (9th Cir 2003). Where the

6

cooperating witness's confessions are were not introduced at a habeas petitioner's trial, however, he must show that the witness' trial testimony was involuntary or coerced in order to obtain habeas relief. *Id.*

In the present case, petitioner has failed to establish that either Brooks' statements to the police or his trial testimony was coerced or involuntary. Therefore, petitioner has failed to show that counsel was ineffective for failing to move for the suppression of Brooks' statements or testimony on this basis. *See Allen v. Stratton,* 428 F. Supp. 2d 1064, 1081-82 (C.D. Cal. 2006).

Petitioner next contends that counsel was ineffective for failing to raise the issue of juror misconduct. After trial, counsel spoke with two jurors who had been excused from deliberations. One of the jurors mentioned that she "felt" that some of the jurors had already discussed amongst themselves their belief that petitioner was guilty.

Mere speculation regarding the possibility of inappropriate juror bias is insufficient to meet the prejudice prong under *Strickland*, with respect to the failure of counsel to try to remove an allegedly biased juror. *See Tafoya v. Tansy,* 9 Fed. Appx. 862, 871 (10th Cir. 2001). Given that petitioner's claim of juror bias is highly speculative, counsel's failure to raise the issue did not prejudice petitioner, for purposes of establishing a claim of ineffective assistance of counsel. *See Palmer v. United States,* 46 Fed. Appx. 5, 8 (1st Cir. 2002).

Petitioner next contends that counsel was ineffective for advising him not to testify. In his fifth claim, petitioner contends that the trial court failed to ascertain on the record whether petitioner knowingly waived his right to testify.

When a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed. *Gonzales v. Elo*, 233 F. 3d 348, 357 (6th Cir. 2000). A trial court has no duty to inquire *sua sponte* whether a defendant knowingly, voluntarily, or intelligently waives his right to testify. *United States v. Webber*, 208 F. 3d 545, 551-52 (6th Cir. 2000). In addition, a state trial judge is not constitutionally required to specifically address a criminal defendant and both explain that he has a right to testify and ask him whether he wishes to waive that right. *Siciliano v. Vose*, 834 F. 2d 29, 30 (1st Cir. 1987); *See also Liegakos v. Cooke,* 106 F. 3d 1381, 1386 (7th Cir. 1997). Waiver of the right to testify may be inferred from a defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so. *Webber,* 208 F. 3d at 551. Here, petitioner did not alert the trial court at the time of trial that he wanted to testify. Thus, his failure to do so constitutes a waiver of this right. *Id.* Because the record is void of any indication by petitioner that he disagreed with counsel's advice that he should not testify, petitioner has not overcome the presumption that he willingly agreed to counsel's advice not to testify or that his counsel rendered ineffective assistance of counsel. *Gonzales,* 233 F. 3d at 357.

Petitioner lastly claims that counsel was ineffective for failing to object to prosecutorial vouching. Petitioner has also raised his prosecutorial misconduct claim as a separate claim. For purposes of judicial economy, the Court will address the substantive prosecutorial misconduct claims along with this part of petitioner's ineffective assistance of counsel claim. *See Millender v. Adams,* 187 F. Supp. 2d 852, 874 (E.D. Mich. 2002).

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not

8

the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-56 (6th Cir. 1993). In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Id.*

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F. 3d 731, 737 (6th Cir. 1999). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence, including the conclusion that the evidence proves the defendant's guilt. *Id.* The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987). It is worth noting that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F. 3d 486, 537 and n. 43 (6th Cir. 2000).

In reviewing the prosecutor's comments, the statements made by the prosecutor did not amount to improper vouching, but were based instead on what the prosecutor believed had been

9

established by the evidence introduced at trial. When reviewing the prosecutor's comments in the closing argument in their entirety, a jury could not reasonably believe that the prosecutor was indicating a personal belief in the credibility of Richard Brooks.

Because this Court concludes that the prosecutor's arguments did not prejudice petitioner so as to deprive him of a fair trial, petitioner's claim that counsel rendered ineffective assistance of counsel by failing to object to the prosecutorial misconduct in this case must also be rejected. *Millender,* 187 F. Supp. 2d at 876.

### B. Claim # 2. The tape recording claim.

Petitioner next claims that his jury was improperly given a tape recording of the trial testimony after the trial court instructed the jury that it could not rehear the testimony after it had made a request to rehear the testimony. The Michigan Court of Appeals rejected this claim, finding that there was no evidence that a tape recording of the trial testimony was ever given to the jury and that to the contrary, the trial court informed the jurors that it should resume its deliberations without rehearing the requested testimony at that time. *Evans,* Slip. Op. at * 4.

In the present case, the Michigan Court of Appeals found that the tape recording of the testimony had never been submitted to the jury for their review during deliberations. This is a factual finding that is presumed correct on habeas review. *See e.g. Jackson v. Shanks,* 143 F. 3d 1313, 1323 (10th Cir. 1998). Because petitioner has failed to rebut the Michigan Court of Appeals' factual findings that this tape recording was never submitted to the jury, he is not entitled to habeas relief on his claim.

### C. Claim # 4. The great weight of the evidence claim.

Petitioner next contends that the jury's verdict went against the great weight of the evidence.

A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. *Cukaj v. Warren,* 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002). A claim that a verdict went against the great weight of the evidence is not of constitutional dimension, for habeas corpus purposes, unless the record is so devoid of evidentiary support that a due process issue is raised. *Cukaj,* 305 F. Supp. 2d at 796; *See also Crenshaw v. Renico*, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003). The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was any evidence to support it. *Dell,* 194 F. Supp. 2d at 648. As long as there is sufficient evidence to convict petitioner of these crimes, the fact that the verdict may have gone against the great weight of the evidence would not entitle him to habeas relief. *Id.* Because there was sufficient evidence to convict petitioner of first-degree murder, he is not entitled to habeas relief on his fourth claim.

**D.  Claim # 6.  The cumulative errors claim.**

Petitioner next contends that he is entitled to habeas relief because of the cumulative error.

The cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief, because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker,* 425 F. 3d 250, 256 (6th Cir. 2005). Therefore, petitioner is therefore not entitled to habeas relief on the grounds of cumulative error. *Id.*

**E. Claim # 7.  The impartial jury claim.**

Petitioner next claims that he was denied an impartial jury drawn from a cross-section of the community because the only two African-American jurors who were part of the original jury panel of fourteen jurors were excused as alternates prior to deliberations in order to reduce the number of the jurors to twelve.

Although a defendant has no right to a petit jury composed in whole or in part of persons of his or her own race, he or she does have the right to be tried by a jury whose members are selected by indiscriminatory criteria. *Powers v. Ohio*, 499 U.S. 400, 404 (1991)(internal citations omitted).  While states may prescribe relevant qualifications for their jurors, members of a community may not be excluded from jury service on account of their race. *Id.*

A defendant, however, may not challenge the makeup of a jury merely because no members of his or her race are on a jury, but must prove that his or her race has been systematically excluded. *Apodoca v. Oregon*, 406 U.S. 404, 413 (1972); *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 598-99 (E.D. Mich. 2001).  In order to establish a prima facie violation of the fair cross-section requirement, a defendant must show:

> (1) that the group alleged to have been excluded is a 'distinctive group' in the community;
> 
> (2) that the representation of that group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and
> 
> (3) that  the underrepresentation is due to the systematic exclusion of the group in the jury selection process.
> 
> *Duren v. Missouri*, 439 U.S. 357, 364 (1979).

"More than mere numbers must be provided to establish that African-Americans are

systematically underrepresented in the [ jury] venire." *United States v. Greene*, 971 F. Supp. 1117, 1128 (E.D. Mich. 1997).  The strength of the evidence of underrepresentation of the group in the venire is only one factor to be considered in determining whether a prima facie violation of the fair cross-section requirement has been established.  Factors such as the nature of the process by which jury lists are composed and the length of time of underrepresentation, together with the strength of the evidence that purports to establish unfair and unreasonable representation also need to be examined. *Id.*( *citing to Ford v. Seabold*, 841 F. 2d 677 (6th Cir. 1988)).

In the present case, petitioner has failed to offer any evidence that African-Americans were systematically excluded from his jury.  In this case, the fact that the two African-American jurors were randomly selected as alternate jurors at the conclusion of the trial did not violate petitioner's Sixth Amendment right to an impartial jury in the absence of evidence of any impropriety with regard to the pool used to select the jury in this case. *See Rodriguez v. Maloney,* 299 F. Supp. 2d 1, 3-4 (D. Mass. 2004).  Petitioner is not entitled to habeas relief on his seventh claim.

### F.  Claim # 8.  The jury instruction claim.

Petitioner next contends that his right to a fair trial was violated when the trial court gave the standard jury instruction, CJI 2d 16.21, which instructed the jury that they "may" find that the defendant intended to kill from the use of a weapon in a way that was likely to cause death.  Petitioner contends that this instruction either shifted the burden of proof or prevented the jury from finding that he did not intend to kill the victim, even if the jury believed that he used a weapon.

13

An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (*quoting Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned', but that it violated some [constitutional] right'". *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). A jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *See Johnson v. Smith,* 219 F. Supp. 2d 871, 882 (E.D. Mich. 2002).

The jury instruction in this case did not violate petitioner's right to a fair trial, because the trial court used the permissive term that the jury "may" infer that petitioner intended to kill from the use of a weapon, but the instruction did not mandate that the jury find that petitioner acted with an intent to kill if he used a dangerous weapon. Accordingly, the use of such an instruction did not violate petitioner's right to a fair trial. *See Casale v. Fair,* 653 F. Supp. 856, 860 (D. Mass. 1987).

**G. Claim # 9. The readback of testimony claim.**

Petitioner next contends that the trial court violated his right to a fair trial by refusing the jury's request to have certain testimony readback to them.

There is no U.S. Supreme Court decision that requires judges to re-read testimony of witnesses or to provide transcripts of their testimony to jurors upon their request. *See Friday v. Straub,* 175 F. Supp. 2d 933, 939 (E.D. Mich. 2001). A habeas petitioner's claim that a state trial court violated his right to a fair trial by refusing to grant a jury request for transcripts is therefore not cognizable in a habeas proceeding absent a showing that this state law error

deprived a habeas petitioner of fundamental fairness. *Spalla v. Foltz,* 615 F. Supp. 224, 233-34 (E.D. Mich. 1985).

In this case, the trial court did not refuse the jury's request for the re-reading of testimony, but merely postponed the jury's request in an attempt to spur the jury to use its memory and avoid unnecessary delay and was therefore a proper exercise of the trial court's discretion. *See Gittens v. Scully,* 737 F. Supp. 840, 843 (S.D.N.Y. 1990). In the present case, petitioner has failed to show that the trial court's refusal to readback testimony to the jurors deprived petitioner of fundamental fairness so as to entitle him to relief on this claim.

**H.  Claim # 10.  The sentencing claim.**

Petitioner lastly contends that his mandatory nonparolable life sentence is cruel and unsuusal punishment and violates the Michigan constitution because it is an indeterminate sentence.

In the present case, petitioner's sentence of life imprisonment without parole was within the statutory limits for the offense of first-degree murder. A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Robinson v.Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001). A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment either. *Austin v. Jackson*, 213 F. 3d 298, 302 (6th Cir. 2000); *Johnson,* 219 F. Supp. 2d at 884. Petitioner's sentence of life imprisonment without parole for first-degree murder does not amount to cruel and unusual punishment so as to entitle him to relief. *See Foster v. Withrow,* 159 F. Supp. 2d 629, 645-46 (E.D. Mich. 2001)(collecting cases).

Michigan's first-degree murder statute authorizes a mandatory nonparolable life sentence. Pursuant to M.C.L.A. 769.9(1); M.S.A. 28.1081(1), the Michigan Legislature has determined that the provisions of Michigan's indeterminate sentencing statute do not apply to mandatory life offenses. The Michigan Legislature's determination that the indeterminate sentencing statute shall not apply to mandatory life offenses involves an interpretation of state law that is non-cognizable in federal habeas review. *See Sawyer v. Morgan,* 192 Fed. Appx. 640, 641 (9th Cir. 2006).

In this case, because petitioner's sentence falls within the statutory limits, petitioner is not entitled to habeas relief. *Robinson,* 157 F. Supp. 2d at 823.

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson,* 219 F. Supp. 2d at 885. The Court will also deny

petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

### IV.    CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.  The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE


Dated:  January 12, 2007


### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on January 12, 2007.


s/Denise Goodine
Case Manager